JERRY E. SMITH, Circuit Judge:
The plaintiff class is comprised of lawful permanent residents (“LPR’s”) faced with pending deportation or exclusion proceedings[1] in which no final order of deportation or exclusion has yet been entered, who are not presently held in detention, and whose immigration documents have been confiscated by the Harlingen, Texas, office of the Immigration and Naturalization Service (“INS”). Plaintiffs object to INS’s practice of seizing an LPR’s laminated Form 1-151 or 1-551 (“green card”)[2] and other government documents and issuing, in their place, an 1-94 “Temporary Evidence of Lawful Permanent Resident” form containing extraneous information announcing the holder’s pending removal proceedings. They additionally claim that LPR’s are entitled to notice and a hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings.
The district court granted the plaintiffs’ request for injunctive relief. Its final order, dated January 13, 1999, regulates the seizure of an LPR’s green card and issuance of temporary documents pending removal proceedings, requires the INS to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal, and guarantees LPR’s the right not to have their other lawfully issued documents confiscated unless those documents constitute bona fide evidence of unlawful conduct.[3]
*987 The government presents a series of procedural and substantive objections to the order.' With respect to the seizure of green cards and issuance of temporary documents, we conclude that the order was too sweeping in light of 8 C.F.R. § 264.5(g), which is cited by neither party nor the district court. In addition, we conclude that federal courts have no jurisdiction to review parole decisions of the Attorney General. Finally, we decide that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court.
We therefore vacate the order and remand for any further proceedings that may be required. We also vacate an earlier, preliminary order benefiting an individual who is not a member of the plaintiff class.
I.
The government claims the plaintiffs lack standing.[4] “[T]he critical standing question is whether the plaintiff has demonstrated a personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant’s allegedly unlawful conduct, and that such an injury is likely to be redressed by a favorable judicial decision.” National Treasury Employees Union v. United States Dep’t of Treasury, 25 F.3d 237, 241 (5th Cir.1994). In identifying an injury that confers standing, courts look exclusively to the time of filing. See Ped-erson v. Louisiana State Univ., 213 F.3d 858, 870 (5th Cir.2000).
We reject the government’s contention that the plaintiffs lack standing, for want of injury, to challenge their denial of immigration documentation. Green cards “play a significant role in the day-to-day lives of LPRs.”[5] And although the 1-94 forms issued in place of the green cards do evidence LPR status, they additionally state:
Warning — A nonimmigrant who accepts unauthorized employment is subject to deportation.
Important — Retain this permit in your possession; you must surrender it when you leave the U.S. Failure to do so may delay your entry into the U.S. in the future.
You are authorized to stay in the U.S. only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law.
As plaintiffs adequately allege, inadequate immigration documents result in a greater degree of harassment by the INS and diminished employment opportunities. Indeed, the government admits that aliens who hold only temporary 1-94 forms are “more likely to be more closely inspected” than are holders of green cards. Although the government argues that plaintiffs fail to identify a single LPR who has actually suffered such injury, actual injury is not constitutionally required.
*988 Mere threatened injury is sufficient,[6] and the threat in this case is real. For example, according to the plaintiffs, “[a]s a result of INS’ arbitrary confiscation of his 1-551, Loa [a former plaintiff, now deceased] endured almost two hours of detention at the border, and an unreasonable search, causing ‘inconvenience, and public humiliation.’ ” Plaintiffs therefore have asserted sufficient injury to confer standing.
More troubling is the government’s contention that the district court failed to give the government an opportunity to present argument before issuing its order. Because of our rulings on the government’s substantive claims, which we discuss below, we do not address these allegations. Instead, we vacate the order and remand for further proceedings, during which the INS assuredly will have ample opportunity to press any additional legal or factual arguments it wishes to make and thereby to cure any procedural defects regarding the order.
II.
The government’s substantive objections to the order regard the issuance and confiscation of immigration documents. LPR’s are authorized to work in the United States.[7] Even “LPRs who are placed in deportation proceedings do not lose the status of lawful residents and its attendant benefits until ... a final deportation order [has been] issued.” Etuk, 936 F.2d at 1447. Until deported or excluded, LPR’s are fully entitled to remain in the United States and seek employment, for “[t]he fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien’s status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final.” Molina v. Sewell, 983 F.2d 676, 680 (5th Cir.1993).
In addition, federal law guarantees LPR’s certain rights of documentation they can use to prove, to potential employers and others, their right to be in the United States. How that right is protected in practice, however, is within the express discretion of the Attorney General.[8]
In granting the plaintiffs injunctive relief on the question of LPR documentation, the district court relied substantially on a 1990 internal INS policy clarification (the “McNary Memorandum”),[9] which di *989 rected the INS not to seize green cards absent individualized circumstances and must “be followed until appropriate regulations and operations instructions are published.” The district court erred in relying on the McNary Memorandum, for an agency’s internal personnel guidelines “neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely.” Fano v. O’Neill, 806 F.2d 1262, 1264 (5th Cir.1987). The memorandum merely articulates internal guidelines for INS personnel; it does not establish judicially enforceable rights.
Inexplicably, neither the district court nor any of the parties cite 8 C.F.R. § 264.5(g) (2000), which states in its entirety:
A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form 1-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. Issuance of an Permanent Resident Card to a person in exclusion or deportation proceedings, provided the person had status as a lawful permanent resident
when the proceeding commenced, shall not affect those proceedings.
Because the district court erred to the extent that its order relied on the McNary Memorandum, we vacate the order and remand so the court can determine whether an injunction is appropriate in light of § 264.5(g). In doing so, we make a number of observations regarding the scope and meaning of that regulation.
Section 264.5(g) reqvires that the INS issue the temporary form 1-551 to persons in exclusion proceedings.[10] By contrast, the regulation does not specify the form of documentation with respect to those in deportation proceedings.
In addition, § 264.5(g) requires only that the INS provide documentary evidence of LPR status. The regulation plainly does not restrict the INS from attaching additional notations to caution employers that a potential worker, although an LPR and therefore currently authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment.
The Attorney General is free to issue new regulations and amend the requirements of § 264.5(g) (provided, of course, that the requisite procedure is fol *990 lowed). Absent any legal authority to the contrary, however, the district court may not interfere with the Attorney General’s statutory discretion to balance an LPR’s interest in possessing particular forms of documentation against an employer’s interest in knowing a potential employee’s present and future immigration status.
III.
The government also challenges the portion of the order respecting the Attorney General’s discretion to grant parole within the United States. The Attorney General is vested with broad powers over the custody of all aliens (including LPR’s) against whom deportation or exclusion proceedings are pending.[11] “[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.” 8 U.S.C. § 1225(b)(2)(A). Where such an alien “is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.” 8 U.S.C. § 1225(b)(2)(C).
Alternatively, instead of paroling the individual out of the United States,
[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.... [P]ending such decision, the Attorney General—
(1) may continue to detain the arrested alien; and
(2) may release the alien on—
(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole.
8 U.S.C. § 1226(a).[12]
The plaintiffs argue that, pursuant to Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), due process requires the INS to provide an LPR with notice of his right to parole within the United States[13] and with a parole hearing before the Attorney General decides how to exercise her discretion. Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plain *991 tiffs’ statutory and constitutional rights to parole.[14]
The plaintiffs respond that the Attorney General’s parole authority at issue in this case is found not in 8 U.S.C. § 1226, but instead in 8 U.S.C. § 1225(b)(2)(C). Therefore, they argue, the bar on judicial review contained in § 1226(e), which applies only to “this section,” does not bar this suit. But § 1225(b)(2)(C) only authorizes the Attorney General to return an applicant for admission to Mexico pending the exclusion proceedings. It is § 1226(a), by contrast, that authorizes her to grant parole within the United States to an LPR subject to removal proceedings.
In sum, “[t]he Attorney General’s discretionary judgment regarding the application of’ parole — including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints' — is “not ... subject to review.” § 1226(e). Without reaching the merits of the plaintiffs’ constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.[15]
IV.
Before the subject order was entered, the district court granted preliminary relief to Jesus Garza-Pacheco. On appeal, the government asserts that the court had no authority to grant any relief whatsoever to him, because he is neither a named plaintiff nor a member of the plaintiff class.
We quickly dispense with the plaintiffs’ assertion that this court has no appellate jurisdiction to review the Garza-Pacheco order. Appellants have the “choice of appealing from [a preliminary] order within fifteen days or of awaiting a final decree, for all interlocutory orders are reviewable on appeal from the final decree.” Gloria Steamship Co. v. Smith, 376 F.2d 46, 47 (5th Cir.1967) (citations omitted). And although the government’s notice of appeal designates only the January 13, 1999, order, a “notice of appeal to this Court from the final decree of the District Court invoked the jurisdiction of this Court to examine the interlocutory order as well as the final decree.” Id.
We also agree with the government’s argument on the merits. The plaintiff class is restricted to LPR’s “who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered.” Garza-Pacheco therefore was not a valid member of the class, because a final order of deportation has been executed against him. “In the complaint the title of the action shall include the names of all the parties.” Fed.R.Civ.P. 10(a). Failure to name a party denies a court jurisdiction over that party.[16]
*992 We therefore VACATE the final order of January 13, 1999, and the preliminary order regarding Garza-Pacheco, and we REMAND for any further necessary proceedings.

. The Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA”) "changed the nomenclature of immigration orders so that orders of deportation and orders of exclusion are both now referred to as 'orders of removal.’ ” Cardoso v. Reno, 216 F.3d 512, 515 n. 3 (5th Cir.2000). See also IIRIRA § 309(d)(2), 110 Stat. 3009-546, 3009-627 (1996) (stating that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.”).

. See Etuk v. Slattery, 936 F.2d 1433, 1436 (2d Cir.1991) ("The INS regulations provide for the issuance of either of two registration forms to LPRs — the Form 1-151 or Form I-551. Form 1-151 registration cards were issued to LPR’s before June 1987. Since then, LPR’s have been issued the 1-551 form. Both of these forms provide LPR’s with proof of their alien registration and legal status. The documents are popularly referred to as 'green cards.' ”).

.The order states:
1. Pursuant to the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form 1-151 or 1-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case. When such a resident’s green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.
2. When a permanent resident applying for admission to the U.S. is placed under expulsion proceedings. Defendants may confiscate the resident's green card, but shall afford said person a prompt hearing before an Immigration Judge, in accor *987 dance with 8 C.F.R. § 236.1, to determine whether he or she should be paroled into the U.S. during the pendency of said proceedings, and if so, under what conditions. If the person is so paroled, and not held in custody, Defendants shall provide a substitute document evidencing permanent resident status, and entitlement to be employed in the U.S.; and
3.Defendants shall not confiscate any other lawfully issued documents from permanent residents, absent a good faith belief that such documents constitute bona fide evidence of unlawful conduct.

.Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status. Because the plaintiffs adequately allege injury in the balance of their complaint, we limit our analysis accordingly.

. Etuk, 936 F.2d at 1437 ("... Congress increased the importance of the green card with its adoption of the Immigration Reform and Control Act of 1986 ... in order to establish one’s eligibility for a variety of government funded assistance programs ... [and in the area of] employment authorization.”).

. See City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("Lyons’ standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers.”); Friends of the Earth, Inc. v. Crown Cent. Petroleum, 95 F.3d 358, 360 (5th Cir.1996); Hernandez v. Cremer, 913 F.2d 230, 234 (5th Cir.1990) ("Although at present Hernandez is safely inside the United States, he is ... entitled to travel to and from Mexico without deprivation of his Fifth Amendment due process rights. We think there is at the very least a reasonable expectation that Hernandez will exercise his right to travel. Indeed, Hernandez testified that he would like to return to Mexico, but did not 'want to run the risk of something like this happening again.’ ”) (citation omitted).

. See 8 U.S.C. § 1324a(a)(l)(A), (h)(3).

. See 8 U.S.C. § 1304(d) ("Every alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the provisions of this chapter shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General.”); Etuk, 936 F.2d at 1444 ("The INA mandates that the Attorney General provide LPRs who register with proof of their legal status.”). See also 8 C.F.R. § 264.1 (listing forms).

.The McNary Memorandum states:
Litigation over the disposition of Forms 1-151 and 1-551 once the holders have been placed in deportation ... proceedings has revealed a need for clarification of Service policy in this area. The instructions contained in this memorandum are effective upon receipt, and will be followed until appropriate regulations and operations instructions are published.
DEPORTATION PROCEEDINGS
A lawful permanent resident alien in deportation proceedings is required to be regis *989 tered under section 261 or 262 of the Immigration and Nationality Act, as amended, and to be in possession of evidence of such registration. Form 1-151 or 1-551 [green card] is the appropriate evidence of alien registration for lawful permanent residents in the United States. Accordingly, when an order to show cause is issued, and the recipient is the holder of Form 1-151 or 1-551 and is not detained or incarcerated, he or she shall be allowed to retain possession of evidence of alien registration. If the alien has no evidence of alien registration, Form 1-90 shall be filed and processed, and the appropriate documentation will be issued by the office having jurisdiction.
... If the district director, chief patrol agent or officer in charge determines that a temporary document is needed to assure the alien’s appearance at hearings, or for other justifiable reasons, the [green card] will be lifted, and a temporary 1-551 issued.
In these cases, temporary Forms 1-551 will be prepared in accordance with the guidance in O.I. 264.1, and will be issued for a period sufficient to allow completion of the deportation proceedings, but in no case less than six months.
McNary Memorandum, Memorandum from Office of Commissioner to All District Directors (Mar. 14, 1990).
Etuk, 936 F.2d at 1442.

. We reject the government’s contention that the requirement of evidence "in the form of a temporary Form 1-551” is satisfied by the issuance of any form that is similar to a Form 1-551, for that is not the most reasonable construction of the regulation. Instead, under the plain meaning of § 264.5(g), the INS must issue the temporary Form 1-551 to persons in exclusion proceedings; substitute forms are not sufficient.

. An "alien” is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The term thus includes LPR’s. See also 8 U.S.C. § 1101(a)(20) ("The term lawfully admitted for permanent residence’ means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.”).

. See also 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.”); 8 C.F.R. § 212.5; 8 C.F.R. § 235.3(c)-(d).

. But see City of West Covina v. Perkins, 525 U.S. 234, 240-41, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful.... No similar rationale justifies requiring individualized notice of state-law remedies which ... are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.”).

. See Lopez-Elias v. Reno, 209 F.3d 788, 793 (5th Cir.2000) (“Federal courts derive their power to adjudicate from Congress, and not from the Constitution alone.”), petition for cert. filed, 69 U.S.L.W. 3128 (July 28, 2000) (No. 00-164); 8 U.S.C. § 1226(e) ("The Attorney General’s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.”).

. See U.S. Const. art. VI, cl. 3 (“all executive ... Officers ... shall be bound by Oath or Affirmation, to support this Constitution”); David P. Currie, The Constitution in Congress: The Federalist Period 1789-1801 at ix-x (Chicago 1997) (“Members of Congress and executive officers, no less than judges, swear to uphold the Constitution, and they interpret it every day in making and applying the law.... [B]oth Congress and the Executive have a great deal to tell us about the Constitution.”).

. See National Commodity & Barter Ass’n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir.1989) (holding that “the federal courts lack jurisdic *992 tion over the unnamed parties, as a case has not been commenced with respect to them”).