# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2014

Lyle W. Cayce
Clerk

No. 13-40806

AURELIO DUARTE; WYNJEAN DUARTE; S. D., A Minor, By and through Wynjean Duarte, acting as her Next Friend; BRANDI DUARTE,

Plaintiffs–Appellants

v.

CITY OF LEWISVILLE, TEXAS,

Defendant–Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, WIENER, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Plaintiffs–Appellants Aurelio Duarte ("Duarte") together with his wife and two children (collectively "the Duartes") sued Defendant–Appellee the City of Lewisville, Texas ("Lewisville") for damages and injunctive relief under 42 U.S.C. § 1983. Duarte and his family challenge the constitutionality of a Lewisville ordinance that prohibits registered child sex offenders from residing within 1,500 feet of "where children commonly gather." Duarte is a registered child sex offender, and he asserts that he and his family have tried to find a house to rent or buy in Lewisville but cannot because of the challenged ordinance. The district court dismissed the Duartes' constitutional claims for lack of standing and, alternatively, as moot. We reverse and remand.

No. 13-40806

## I.   BACKGROUND

Duarte challenges the constitutionality of a Lewisville ordinance.  The ordinance provides:

> It is unlawful for a person to establish a permanent or temporary residence within 1,500 feet of any premises where children commonly gather if the person is required to register on the Texas Department of Public Safety's Sex Offender Database (the "Database") because of a conviction(s) involving a minor.

The ordinance defines "premises where children commonly gather" to include "all improved and unimproved areas on the lot where a public park, public playground, private or public school, public or semi-public swimming pool, public or non-profit recreational facility, day care center or video arcade facility is located."  The ordinance enforces this restriction with the following penalties:

> A person who violates any of the provisions of this ordinance shall be guilty of a misdemeanor and upon conviction, shall be fined a sum not to exceed $500.00 for each offense, and each and every violation or day such violation shall continue or exist, shall be deemed a separate offense.

The ordinance also "grandfathers" certain residences.  The ordinance provides an affirmative defense if the person "established the permanent or temporary residence . . . prior to the date of the adoption of this ordinance," or if "[t]he premises where children commonly gather . . . was opened after the person established the permanent or temporary residence."

## A.   Aurelio Duarte's Attempts to Find Housing in Lewisville

Duarte was convicted of online solicitation of a minor in violation of Texas Penal Code § 15.031 and sentenced to eight years in prison.  On his release from prison, Duarte returned to Lewisville, Texas, where he had previously resided with his wife and children prior to his imprisonment, and he registered as a child sex offender.  Duarte's wife worked near Lewisville,

2

and the Duartes' daughters were enrolled in public school in Lewisville. With his wife's assistance, Duarte began looking for a house in Lewisville.

The Duartes learned that, in 2008, Lewisville enacted an ordinance that prohibits registered child sex offenders from residing within 1,500 feet of "where children commonly gather." In light of the ordinance, the Duartes moved into a 275-square-foot one-bedroom motel room located on the service road of Interstate 35W in Lewisville. At the time, this residence did not violate the ordinance. But the motel is now within a proscribed protected zone because of a newly constructed public and semi-public pool nearby. Because the Duartes established their residence there before the opening of the pool, they could continue to lawfully reside there as the residence was "grandfathered."

The Duartes searched for another residence in Lewisville for approximately eighteen months to no avail. Beginning in February 2010 and continuing through August 2011, Duarte's wife, Wynjean Duarte, periodically contacted the Lewisville Sex Offender Registrar, Lisa Peck ("Peck"), to inquire whether residences the Duartes wanted to rent or purchase were within the prohibited zone. On at least nine occasions, Wynjean Duarte contacted Peck to determine whether particular residences were within the protected zone. On six occasions, Peck informed the Duartes that the residences were within zones prohibited by the ordinance. Peck approved three addresses; however, two of these were sold to someone else before the Duartes could purchase them. Regarding the third house, Wynjean Duarte testified that Peck instructed her in 2009 to wait until after Aurelio Duarte was released from incarceration to move, in case a "premises where children commonly gather," like "a day care[,] . . . go[es] up there all of a sudden."

Lewisville points to evidence that the Duartes would have been unable to purchase a home due to their financial circumstances. Aurelio Duarte has been unemployed since 2009, they say. Together, the Duartes had saved

approximately $200 in a bank account. The Duartes counter by pointing out that Wynjean Duarte's mother has offered to provide $5,000 for a down payment on a house. Moreover, although Aurelio Duarte is unemployed, Wynjean Duarte works two jobs. She works full-time, 40 hours a week as an accounting technician, and she works part-time, 20-to-25 hours a week, at Sears.

## B.    The District Court Dismisses the Duartes' Claims

The district court dismissed Duarte's wife and daughters' claims for lack of standing under Federal Rule of Civil Procedure 12. Later, Lewisville moved for summary judgment on Aurelio Duarte's claims. Lewisville asserted that there was no genuine dispute of material fact that Duarte lacked standing to challenge the ordinance. The magistrate judge recommended that summary judgment be granted and the case dismissed for lack of standing and, alternatively, as moot. The district court adopted the recommendation in full, granted summary judgment, and issued a final judgment in favor of Lewisville. The Duartes timely appealed.

## C.    Lewisville's Evidence that Duarte Moved Away

On appeal, Lewisville asks us to take judicial notice of the fact that on or about August 1, 2013, the Duartes moved away from Lewisville to the City of Lake Dallas. Lewisville argues this new fact moots the case. Lewisville submits two certified copies of public records from the Lewisville Police and from the Texas Department of Public Safety's TxDPS Sex Offender Registry showing that the Duartes moved to Lake Dallas. Because these public records are the proper subject of judicial notice on appeal, they will be considered below in evaluating Lewisville's mootness argument. *See In re Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (citing Fed. R. Evid. 201)).

## II.  DISCUSSION

The Duartes appeal the district court's dismissal of their case for lack of standing and, alternatively, as moot.  This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.  We review the district court's decision to dismiss for lack of standing de novo.  *Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010).  On review of a dismissal for lack of standing on summary judgment, we "consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party."  *United Indus., Inc. v. Eimco Process Equip. Co.*, 61 F.3d 445, 447 (5th Cir. 1995).

### A.  Standing

The Duartes appeal the district court's decision dismissing their constitutional claims for lack of standing.  Article III provides that the judicial power of the federal courts extends only to "Cases" and "Controversies," U.S. Const. art. III, § 2, and standing is an "essential and unchanging part of [this] requirement," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a claimant must present (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in the plaintiff's favor.  *Id.* at 560–61; *accord Davis v. FEC*, 554 U.S. 724, 733 (2008).  As the proponents of federal jurisdiction, the Duartes bear the burden to demonstrate standing to bring their constitutional claims.  *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011).

#### 1.  *Actual Injury*

Lewisville primarily argues that the Duartes lack standing because they were never subjected to the ordinance's restrictions and therefore cannot show an actual injury.  Lewisville contends: "It is . . . undisputed that [Duarte] has not been cited or fined for violating the Ordinance," and "Duarte legally lived

with his family [in a Lewisville motel] at an address that was grandfathered, and therefore, the Ordinance had no application to him where he resided." The Duartes counter that they tried to move from the grandfathered address to a new residence, but they were practically foreclosed from doing so by the ordinance.

The issue is therefore whether the Duartes established actual injury for purposes of standing to challenge the constitutionality of the Lewisville ordinance. The Supreme Court has explained that "actual injury" for standing purposes means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted). In *Lujan*, the Court explained a key question is "whether the plaintiff is himself an object of the [government] action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561–62. The Court in *Lujan* held the plaintiffs there lacked standing to challenge the Secretary of the Interior's refusal to extend Endangered Species Act protections to animals abroad. *Id.* at 562. The Court dismissed the case because the individual plaintiffs expressed mere "some day intentions" and failed to produce evidence on summary judgment of "concrete plans" to visit the endangered animals abroad. *Id.* at 564–65 (internal quotation marks omitted).

It follows from *Lujan* that if a plaintiff is an object of a government regulation, then that plaintiff ordinarily has standing to challenge that regulation. This was the conclusion we reached in *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630 (5th Cir. 2012). There, we considered a constitutional challenge to a Texas regulatory scheme designed to remove barriers to market entry for upstart cable-television providers. *Id.* at 634. Time Warner and other

incumbent cable providers challenged the constitutionality of the Texas law, and the district court dismissed the case for lack of standing. We reversed. Relying on *Lujan*, we explained "[t]here can be no dispute that the plaintiffs are the object of the government action here where [the law] singles out certain incumbent operators as ineligible for the benefit of a statewide franchise." *Id.* at 636 (citing *Lujan*, 504 U.S. at 561–62). "Because the legislation targets the plaintiffs for exclusion" we explained, "TCA and Time Warner have shown constitutional injury sufficient to establish standing." *Id.* at 637.

Here, as in *Time Warner Cable*, Duarte is the target of the Lewisville ordinance restricting where registered child sex offenders, like him, can live. Duarte submitted evidence that, taken in the light most favorable to him, establishes that he had "concrete plans" to reside in areas impacted by the Lewisville ordinance, unlike the plaintiffs in *Lujan*. Duarte's wife, on his behalf, contacted the Lewisville County Sex Offender Registrar at least nine times to inquire about potential residences. The Sex Offender Registrar informed the Duartes that six of these houses were in restricted areas. Of the three available houses outside the restricted areas, Duarte proffered evidence that two became unavailable in the time it took for the Sex Offender Registrar to get back to the Duartes. Further, Duarte's wife testified that she had arranged to obtain a $5,000 down payment for a house from her mother. This is a far cry from the evidence in *Lujan*, in which those plaintiffs expressed mere "'some day' intentions—without any description of concrete plans" and confessed that they had no current plans to travel to visit the endangered wildlife. 505 U.S. at 563–64. In short, Duarte prepared and attempted to buy or rent a house in Lewisville, and the ordinance made it more difficult, if not impossible, for him to do so. Thus, Duarte has standing to challenge the ordinance.

No. 13-40806

We reach the same conclusion with respect to Duarte's wife and daughters. Lewisville argues that its ordinance "clearly does not apply to them" because, unlike Aurelio Duarte, they are not registered child sex offenders. Lewisville continues that the ordinance has not prevented the family from living together. But this argument overlooks the practical impact of the Lewisville ordinance on the family. As a practical matter, the Duartes were forced to live in a one-bedroom motel room to comply with the ordinance. In order to find a place to rent or buy where the family could reside together, ultimately, the Duartes moved away, forcing the children to change schools and taking Wynjean Duarte farther from her job. The ordinance therefore interferes with the Duartes' lives "in a concrete and personal way" which the Supreme Court has held is sufficient to confer standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (quoting *Lujan*, 504 U.S. at 580–81 (Kennedy, J., concurring)).

Lewisville's reliance on a decision from a district court in Ohio is misplaced because that case, *Coston v. Petro*, 398 F. Supp. 2d 878 (S.D. Ohio 2005), is distinguishable. The differences between *Coston* and this case illustrate why the Duartes have standing here. In *Coston*, six registered sex offenders sued to enjoin enforcement of an Ohio statute that forbids registered sex offenders from residing "within 1,000 feet of a school premises." *Id.* at 880. The district court dismissed the case because the plaintiffs lacked standing. *Id.* at 887. The court reasoned that the statute did not apply to one of the plaintiffs because he was not convicted of a sexually motivated crime after 1997, as the statute required. *Id.* at 883. The remaining plaintiffs neither lived within 1,000 feet of a school, nor produced any evidence of a "present or imminent intention of moving to a residence within 1,000 feet of a school premises." *Id.* at 884. The court also reasoned "these Plaintiffs have failed to present any evidence that [the sex-offender-residency restriction] has

prevented them from relocating to a residence within 1,000 feet of a school premises." *Id.* In contrast here, the Duartes presented evidence that they intended to reside at six specific residences within 1,500 feet of where children commonly gather. They did not move there because the Sex Offender Registrar informed them that they could not lawfully do so. Unlike *Coston*, it is undisputed here that the Lewisville ordinance applies to Duarte. Thus, *Coston* is distinguishable.

Lewisville's reliance on *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) is similarly unavailing. In *FW/PBS*, the Supreme Court considered the constitutionality of Dallas's comprehensive licensing scheme regulating adult-entertainment and cabaret businesses. *Id.* at 220–21. The regulations prohibited the issuance of an adult-entertainment license to individuals recently convicted of specific crimes, among other restrictions. *Id.* The Court dismissed the plaintiffs' challenge to this provision because they either had not been convicted of an enumerated crime, or had not shown the conviction was sufficiently recent. *Id.* at 234–35. This case is distinguishable. Unlike the petitioners in *FW/PBS*, it is undisputed that Duarte was convicted of a crime enumerated by the Lewisville ordinance. *Cf. FW/PBS*, 493 U.S. at 234 ("[T]he record does not reveal any party . . . was convicted of any of the enumerated crimes."). Thus, *FW/PBS* is also inapposite.[1]

In this case, the district court erroneously granted summary judgment for lack of standing because it conflated the actual-injury inquiry for standing

---

[1] Lewisville also cites two state court decisions from Georgia and Ohio denying standing to sex offenders challenging residency restrictions. These state law cases are irrelevant because Article III standing doctrine "respond[s] to concerns that are peculiarly federal in nature." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 n.8 (1977); *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund*, 895 F.2d 1056, 1061 (5th Cir 1990), *rev'd on other grounds*, 500 U.S. 72 (1991) ("[S]tanding requirements in state courts . . . lack[] relevance here, as standing in federal court is determined entirely by Article III.").

purposes with the underlying merits of the Duartes' constitutional claims. The district court concluded Duarte lacked standing because he resided in a motel room grandfathered under the ordinance, and had not yet been cited or prosecuted under the ordinance. But "it is not necessary that petitioner first expose himself to actual . . . prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). The Duartes' fears of liability are not "imaginary or speculative." *Id.* (internal quotation marks omitted). Instead, their fears are based on correspondence with the Sex Offender Registrar warning against purchasing or renting specific properties. The district court rejected Duarte's argument that he had been "all but prohibited . . . from residing at any location within . . . the City of Lewisville," because three residences were available. But the Duartes need not show they were "legally foreclosed from purchasing or leasing residential premises due solely to the . . . City of Lewisville," as the district court apparently believed. Instead, they need only show that the ordinance treats them differently from other would-be renters or homebuyers making it "differentially *more burdensome*" for the Duartes to find a new place to live for standing purposes. *See Time Warner Cable*, 667 F.3d at 637 (quoting *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 588 (1983)). The factors the district court found significant may ultimately bear on whether Duarte can show constitutional injury to merit an award of damages or injunctive relief—on which we express no opinion.[2] But the district court improperly relied on these

---

[2] We note that the district court, in reviewing the magistrate judge's recommendation, adopted a clearly erroneous view of the record. The district court erroneously stated: "[T]he evidence shows that at the time the defendant's motion for summary judgment was filed, there were 466 houses *on the market* and available to registered sex offenders within the City of Lewisville." (emphasis added). But review of the record would have revealed that—taking the defendant's *brief* in support of its motion for summary judgment as true—of the "460

No. 13-40806

considerations in dismissing the Duartes' constitutional challenge for lack of standing.[3]

## 2.    *Traceable and Redressable*

Lewisville alternatively argues the judgment of the district court can be affirmed because "[t]here is no causal link between the Appellants['] claimed failure to find a residence and the enactment of the ordinance." We disagree.

The Supreme Court has held that a plaintiff has standing if the injury alleged is both "fairly traceable to the Government conduct . . . challenge[d] as unlawful," and  redressable, in that the plaintiff will likely "obtain[] relief from the injury as a result of a favorable ruling." *Allen v. Wright*, 468 U.S. 737, 752, 757 (1984). For example, in *Allen v. Wright*, the parents of black public school children sued the IRS arguing it had not adopted appropriate procedures to deny tax-exempt status to racially discriminatory private schools. The Court held the parents alleged a concrete injury—"their children's diminished ability to receive an education in a racially integrated school"—but held they nonetheless lacked standing because the "line of causation between [the IRS's] conduct and desegregation of [their children's] schools is attenuated at best." *Id.* at 756–57. The Court reasoned "it is entirely speculative . . . whether withdrawal of a tax exemption from any particular school" would redress the parents' injuries and "lead a school to change its policies." *Id.* at 757.

Here, there is a genuine dispute whether the Duartes' inability to find a home in Lewisville is fairly traceable to the ordinance challenged. Viewing the

---

homes in Lewisville that were outside the buffer zones," only "nine houses [were] for sale or rent."

[3] The district court and the magistrate judge also focused on the facts existing "at the time the defendant's motion for summary judgment was filed," even though the Supreme Court's "longstanding rule" is that standing "is to be assessed under the facts existing when the complaint is filed." *Lujan*, 504 U.S. at 569–70 & n.4; *accord Loa–Herrera v. Trominski*, 231 F.3d 984, 987 (5th Cir. 2000) ("In identifying an injury that confers standing, courts look *exclusively* to the time of filing." (emphasis added)).

11

evidence in the light most favorable to the Duartes, one could reasonably infer the reduction of available houses from potentially tens-of-thousands to 466 residences, of which only a handful were available to rent or purchase at a given time, is fairly traceable to the ordinance. Although market forces play a role, the chain of causation is not nearly as attenuated as the connection between IRS tax exemptions, private-school policies, and public-school desegregation in *Allen v. Wright*. Moreover, it is likely a judgment in the Duartes' favor would at least make it easier for them to find a residence to rent or buy in Lewisville. Thus, the Duartes have met the traceable and redressable requirements of standing.

## B.    Mootness

The district court dismissed the Duartes' constitutional claims, in the alterantive, as moot because the Duartes had not pursued a new home in the two years after they initially filed their complaint. The Duartes contend the district court's conclusion that their constitutional claims were moot was error because they amply demonstrated that Duarte "desires and intends to secure a residence in Lewisville wherein he and his immediate family can reside together" and because they maintain a claim for damages. Lewisville counters this case is moot because "[a]ny controversy vanished when the Appellants left Lewisville," referring to the judicially noticed fact that the Duartes now live in Lake Dallas.

The district court's conclusion and Lewisville's argument on appeal overlook the Duartes' claims for monetary relief. "This court and others have consistently held that a claim for nominal damages avoids mootness." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 & n.32 (5th Cir. 2009) (collecting cases); *see also* 13C Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 3533.3 (3d ed. 2013) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains

viable."). The Duartes' complaint explicitly states that they seek "compensatory damages" for deprivation of constitutional rights as well as "nominal damages pursuant to Title 42 U.S.C., Section 1983." Under our decision in *Morgan*, these claims for monetary relief are sufficient to defeat mootness. *See* 589 F.3d at 748–49; *see also Powell v. McCormack*, 395 U.S. 486, 496 n.8 (1969) ("Where several forms of relief are requested and one of these requests subsequently becomes moot, the Court has still considered the remaining requests.").[4]

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court and REMAND for further proceedings.

---

[4] Because the Duartes' constitutional claims are not moot, we need not and do not decide whether their requests for injunctive relief are moot. The district court may decide this question on remand.