# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50388

United States Court of Appeals
Fifth Circuit

**FILED**

January 31, 2017

**Lyle W. Cayce**
Clerk

CLARENCE D. BROWN,

      Plaintiff - Appellant

v.

ALLISON TAYLOR, In Her Individual Capacity; MARSHA MCLANE, In Her Official Capacity as Executive Director, OVSOM; DIANA LEMON, In Her Official and Individual Capacity as Program Specialist/Case Manager OVSOM; BRIAN COSTELLO, In His Official and Individual Capacity as President, Avalon Correctional Services; OFFICE OF VIOLENT SEX OFFENDER MANAGEMENT; AVALON CORRECTIONAL SERVICES, INCORPORATED; CARLOS MORALES, In His Official and Individual Capacity as Facility Director,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:13-CV-17

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge: *

    The district court dismissed this civil rights case brought by a civilly committed individual for two reasons: it held that (1) it lacked jurisdiction over

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50388

some claims under the *Rooker-Feldman* doctrine, and (2) *res judicata* barred the remaining claims. Because *Rooker-Feldman* does not apply and the prior judgment that was the basis for the finding of preclusion has been vacated, we vacate the judgment.

## I.

Clarence D. Brown was convicted in Texas state court of sex offenses. While Brown was serving his sentence for those convictions, the state initiated civil commitment proceedings against him under the Texas Sexually Violent Predator Act, TEX. HEALTH & SAFETY CODE § 841.041. A jury found that he had a behavioral abnormality that made him "likely to engage in a predatory act of sexual violence," and the trial court entered a Final Judgment and Order of Commitment ordering Brown civilly committed.

At that time, the Act provided that an individual determined to be likely to commit future acts of sexual predation should be committed "for outpatient treatment and supervision" to be coordinated by the Texas Office of Violent Sex Offender Management (OVSOM).[1] TEX. HEALTH & SAFETY CODE § 841.081, *et seq.* (West 2003) (amended 2015). In 2015, the Texas legislature amended the Sexually Violent Predator Act. *See* Act of May 18, 2015, 84th Leg., R.S., ch. 845. Among other changes, this provided for an inpatient program and removed criminal penalties for failure to comply with all written requirements imposed by OVSOM and the case manager. *Id.* §§ 16, 32.

Brown's original Order of Commitment, issued under the old statute, mandated that he "reside in supervised housing at a Texas residential facility under contract with [OVSOM] . . . or at another location or facility approved by [OVSOM]," not contact a victim or potential victim, "submit to tracking

---

[1] This office is now known as the Texas Civil Commitment Office. TEX. HEALTH & SAFETY CODE § 841.002(4).

2

No. 14-50388

under a global positioning satellite (GPS)," and "exactingly participate in and comply with the specific course of treatment provided by [OVSOM] and . . . comply with all written requirements of the [OVSOM] and case manager." *See id.* §§ 841.081–.082. The Order also gave "notice" that if Brown did not "strictly comply with the commitment requirements" he would "be charged with a felony of the third degree." *See id.* § 841.085(a)–(b). After the 2015 amendments, the state court issued an Amended Order of Commitment.

Brown has been in OVSOM custody since he completed his prison term. OVSOM first placed him in an El Paso multi-use facility operated by a contractor, Avalon Correctional Services, Inc. Brown was later moved to an Avalon facility in Fort Worth. Brown now resides under OVSOM supervision in a facility in Littlefield not operated by Avalon.

Brown brought this lawsuit in the Western District of Texas against Allison Taylor, former Executive Director of OVSOM, in her individual capacity; Marsha McLane, Executive Director of OVSOM, in her official capacity; and Diana Lemon, a program specialist/case manager with OVSOM, in her official and individual capacities (the OVSOM Defendants). He also sued Avalon, its president Brian Costello, and Carlos Morales, a facility administrator with Avalon (the Avalon Defendants).[2] The complaint asserts fourteen claims related to Brown's time at the El Paso facility. These include allegations that Brown was "forced to live in prison-like facilities with conditions more punitive than those in prison," "housed in dorms with parolees/prisoners" in "squalid," "inhumane" conditions, and subjected to the same intense scrutiny and rules as prisoners. The complaint seeks a declaration that the civil commitment statute and conditions of Brown's

---

[2] The district court denied Brown's request to file a joint complaint on behalf of additional plaintiffs. The court also dismissed OVSOM, originally named as a defendant, as immune from suit. These decisions are not challenged on appeal.

No. 14-50388

confinement are unconstitutional or otherwise illegal, an injunction barring Defendants from engaging in any of the complained of conduct, and damages.

The district court dismissed the complaint with prejudice, concluding that it lacked jurisdiction over about half of the claims under the *Rooker-Feldman* doctrine because they were inextricably intertwined with the state court's Order of Commitment. The court dismissed all remaining claims as precluded by a prior judgment in the Northern District of Texas. In that case, involving similar allegations against the same defendants (excluding Avalon) but related to the time Brown spent at both the Fort Worth and El Paso facilities, the court had dismissed the complaint for failure to state a claim *sua sponte* and with prejudice. *Brown v. Taylor*, 2013 WL 1104268, at *1, *4 (N.D. Tex. Mar. 14, 2013), *vacated* 829 F.3d 365 (5th Cir. 2016).

Brown appealed the judgments in the Northern District of Texas case and in this one. While the present appeal was pending, a separate panel vacated the dismissal in the Northern District of Texas case and remanded. *Brown*, 829 F.3d at 370. The Northern District of Texas has since entered another judgment dismissing the claims, which Brown has again appealed.

## II.

The district court found it lacked jurisdiction over six claims under *Rooker-Feldman*. Applying *de novo* review, we conclude that the doctrine does not apply. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013).

Unless Congress specifies otherwise, only the Supreme Court may review a final judgment of a state court. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (citing 28 U.S.C. § 1257). To avoid end runs around this rule, the *Rooker-Feldman* doctrine dictates that federal district courts lack subject matter jurisdiction over lawsuits that effectively seek to "overturn" a state court ruling. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). They thus may not hear "cases brought by state-court losers

4

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. To determine if *Rooker-Feldman* applies, courts look to the source of the federal plaintiff's alleged injury and what the federal court is being asked to review and reject. *Truong*, 717 F.3d at 382. Review is barred if a claim "asserts as a legal wrong an allegedly erroneous decision by a state court" and requires the court to review and reject the state court's decision. *Id.* at 382–83 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). Claims also may be barred as "inextricably intertwined" with a state court judgment, but only when they "invite a federal district court to 'sit in direct review of state court decisions' by asserting constitutional claims that the state court had not directly addressed." *Id.* at 384–85 (quoting *Exxon Mobil*, 544 U.S. at 286 n.1).

The Supreme Court has found jurisdiction precluded by this "narrow" doctrine only twice. *Exxon Mobil,* 544 U.S. at 283–84. Once when parties defeated in state court alleged an "adverse state-court judgment was rendered in contravention of the Constitution" and asked a federal court to declare that judgment "null and void." *Id.* at 284 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15 (1923)). And once when a party asked a federal court to overturn a state court's determination that he could not be granted an exception to state bar admission rules. *Id.* at 285 (citing *Feldman*, 460 U.S. at 465–73). Even then, the Supreme Court did not find jurisdiction lacking over all of the plaintiff's claims; the district court could hear a challenge to the constitutionality of the bar admission rules as they were not the product of judicial action. *Feldman*, 460 U.S. at 482–83.

Because Brown's claims neither assert as a legal wrong nor invite direct review and rejection of the state court's Judgment and Order of Commitment, *Rooker-Feldman* does not prevent review. Most of the claims dismissed under

*Rooker-Feldman* challenge conditions of Brown's confinement imposed by Defendants, not the state court. The state court's Order does not require Defendants to restrain Brown in squalid, prison-like conditions, force him to share facilities with parolees, or subject him to the same intensive scrutiny as parolees (Claim 3). It does not address whether Defendants must deprive Brown of access to mail or personal property or the right to spend money without notice or opportunity to be heard (Claim 4). Nor does it require them to deprive Brown of access to a law library (Claim 6). The Order does not authorize Defendants to conduct the alleged searches and seizures that Brown argues violate the Fourth Amendment (Claim 12). In allegedly imposing these conditions, Defendants exercised discretion in implementing the Order. *Rooker-Feldman* does not prevent review of such discretionary executive action taken in enforcing state court judgments. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002); *Mosley v. Bowie Cty. Tex.*, 275 F. App'x 327, 329 (5th Cir. 2008) (noting that although a court could not hear a collateral attack on a state court judgment requiring payment of child support, it could consider claims that defendants violated constitutional rights "in the effort to enforce the state child support judgment"); *Land & Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674, 680 (5th Cir. 2015) ("[T]he . . . claims do not attack the state-court judgment; they complain about the [defendants'] violations of their independent legal obligations.").

Defendants argue that the claims nonetheless are barred because the state court committed Brown to OVSOM supervision and ordered that he comply with OVSOM rules. Under Defendants' theory, by doing so, the state court immunized OVSOM rules and all actions taken in supervising Brown from federal district court review, no matter how OVSOM or its agents treated Brown or what rules they decided to impose. That would stretch *Rooker-Feldman* well beyond its narrow bounds. Regardless of the state court's

directive that Brown "exactingly . . . comply with" OVSOM rules and written requirements, Defendants exercised discretion in establishing the challenged conditions of Brown's confinement, and thus the *Rooker-Feldman* doctrine "has no application." *Verizon*, 535 U.S. at 644 n.3.

Claims 10 and 13 have more of a relationship to the state court's Order but still are not fairly read as challenging it or requiring its review or rejection. The district court described Claim 10 as an allegation that Defendants "deprived [Brown] of his property interests by imposing the costs of [GPS] tracking on him without allowing him to work." In accordance with section 841.082(a)(4) of the civil commitment statute, the Order of Commitment requires that Brown "submit to tracking under a [GPS] monitor or other monitoring system." Although an additional statutory provision makes nonindigent committed individuals "responsible for the cost of . . . the tracking service required by Section 814.082," TEX. HEALTH & SAFETY CODE § 841.084(a)(1)(B), Brown's commitment Order does not mention the provision. This makes clear what would be true even if the Order did include the payment requirement: a district court is permitted to hear a challenge to the validity of a law underlying a state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (holding that the district court had jurisdiction to consider a prisoner's section 1983 case seeking DNA–testing of evidence because the case challenged "Texas' post conviction DNA statute 'as construed' by the Texas courts" rather than challenging prior decisions denying requests for DNA testing through state-law procedures). This claim is thus akin to the constitutional challenge to state bar admission rules in *Feldman*, over which the federal court had jurisdiction. *See Feldman*, 460 U.S. at 482–83. In addition, neither the Order nor the statute say anything about whether Brown is permitted to work. Defendants have not permitted Brown to work in their discretion, so federal

court review of that decision, like those discussed above, is not tantamount to appellate review of the commitment order. *See Mosley*, 275 F. App'x at 329.

Finally, Claim 13 alleges that Brown was "charged with minor violations and returned to prison" in order to "make room for new civil commit[s]" because there "are significantly more civil[ly] committed persons tha[n] there are beds in civil commitment." This appears to relate to the provision in the Order giving Brown notice that if he did not comply with directives from treatment providers, he would "be charged with a felony of the third degree."[3] This penalty comes from section 841.085 of the commitment statute. Claim 13 thus is another challenge to legislative action and not the state court's Order. *See* TEX. HEALTH & SAFETY CODE § 841.085 (West 2003) (amended 2015) (stating that a committed individual commits an offense by violating any commitment requirement imposed under section 841.082); *Id.* § 841.082 (stating that the state court "shall" impose the commitment requirements in that section). Such a challenge to the validity of the statutory scheme which does not require review of a "particular" judicial decision does not fall within *Rooker-Feldman*'s narrow ambit. *See Feldman*, 460 U.S. at 487.

The *Rooker-Feldman* doctrine therefore does not bar review of Claims 3, 4, 6, 10, 12, and 13.

## III.

The district court dismissed Brown's remaining claims as precluded because the Northern District of Texas had entered a final judgment on the merits of those claims in a case with the same named parties. In light of our

---

[3] Alternately, the claim can be read as a challenge not to the statutory scheme, but to the way Defendants enforced it. Like the claims discussed above, the state court did not require or authorize Defendants to charge and arrest Brown as a way of addressing overcrowding. When the claim is read this way, the Order is not the source of Brown's alleged injury, and the district court need not review or reject it to grant relief.

court's subsequent decision vacating that judgment, Defendants concede that dismissal of the claims in this case should be reversed. We agree. *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir. 2001) (holding that "*res judicata* no longer binds" the court when the judgment with preclusive effect has been vacated), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); RESTATEMENT (SECOND) OF JUDGMENTS § 16 cmt. c (1982).

We note, however, that the Northern District of Texas has now entered a new judgment in the related case, which Brown has appealed. We urge the parties and the district courts to consider procedural devices such as transfer and consolidation that could minimize the inefficiency and complication caused by two ongoing cases arising out of the same facts.

## IV.

In light of our determination that neither *Rooker-Feldman* nor *res judicata* supported dismissal, Defendants urge us to consider other possible grounds for affirming. One is mootness. Since Brown filed this lawsuit, the statutory amendments we discussed have been enacted, changing some aspects of Brown's confinement. And OVSOM has relocated Brown out of an Avalon facility. When a controversy "has resolved to the point that [the parties] no longer qualify as adverse parties with sufficient legal interests to maintain the litigation, [a court is] without power to entertain the case." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009) (internal quotation marks and citation omitted).

Some of the relief Brown requested may no longer be available. It appears the Avalon Defendants no longer control conditions of Brown's confinement and are unlikely to regain such control, so that requests for prospective relief against them are likely moot. *See Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2001) (dismissing as moot inmate's claim for declaratory

and injunctive relief when inmate had been transferred from the offending facility). OVSOM still exercises authority over Brown, but the revised statute has changed the terms of Brown's confinement so that some prospective relief Brown seeks (such as enjoining enforcement of the prior Act's now repealed criminal penalty provision or imposing its repealed mandate that Brown be given outpatient treatment) likely is no longer available even against those defendants. We note, however, that Brown's complaint contains more than four pages of requested relief, and we cannot conclude at this stage that all requests for injunctive relief are moot. For example, the amended statute still requires Brown to defray the costs of his GPS tracking, a requirement Brown seeks to enjoin. TEX. HEALTH & SAFETY CODE § 841.084.

Regardless of what prospective relief remains viable, Brown's claims are not moot because he requests damages. *See Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009). Of course, some Defendants sued in their official capacities may be entitled to Eleventh Amendment immunity from damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ex Parte Young*, 209 U.S. 123, 167 (1908). But most of the OVSOM Defendants are also sued in their individual capacities, and the Avalon Defendants have no claim to invoke immunity under the Eleventh Amendment, *Richardson v. McKnight*, 521 U.S. 399, 412 (1997).[4] Because the Eleventh Amendment does not bar all of Brown's claims for damages, his request for nominal damages

---

[4] Although the Avalon Defendants do not invoke Eleventh Amendment immunity, they claim they are entitled to immunity under the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE § 841.147(4). Such immunity requires a determination of good faith, which has not been litigated. *Id.* More fundamentally, state law cannot provide immunity from a section 1983 claim. *Martinez v. State of California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." (quoting *Hampton v. City of Chi., Cook Cnty., Ill.*, 484 F.2d 602, 607 (7th Cir. 1973))).

No. 14-50388

means the entire case is not moot. *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 521 (5th Cir. 2014) (noting that we have "consistently held that a claim for nominal damages avoids mootness"). In light of that, it makes sense to allow the district court on remand to sort out which claims for injunctive relief may be moot and which claims for damages are barred by the Eleventh Amendment. *Id.* at 521 n.4 (remanding for district court to consider whether requests for injunctive relief were moot given holding that request for nominal damages defeated mootness); *see Powell v. McCormack*, 395 U.S. 486, 496, 496 n.8 (1969) (finding that because a claim for back salary remained viable it was "unnecessary to determine whether . . . other issues ha[d] become moot" and remanding for further consideration of mootness).

## V.

Defendants urge us to affirm on yet another ground: that Brown failed to state a claim under Rule 12(b)(6). Especially in light of the number of claims alleged, however, Defendants inadequately briefed this issue. The OVSOM Defendants devote just one, necessarily conclusory, sentence to the topic. The Avalon Defendants do a bit more, but still spend only a page seeking a merits ruling on fourteen claims. This is inadequate for us to rule on a ground for dismissal in the first instance. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010); *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 345 (5th Cir. 2008) (Jones, J., concurring in part and dissenting in part) (urging that the court take "a more cautious approach" to affirming on alternative grounds). Initial review of the merits by a trial court is especially helpful in cases with numerous and complex issues. *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 427 (5th Cir. 2013).

## VI.

Because the judgment of the district court is vacated, the "strike" the district court imposed under the three strikes provision of the Prison Litigation

11

No. 14-50388

Reform Act is reversed. *See Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 617 (5th Cir. 2008). We further note that whatever the outcome on remand, the three strikes provision does not apply to Brown as a civilly committed detainee. 28 U.S.C. § 1915(g)–(h); *Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013); *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009).

* * *

The judgement of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.